UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WYNDHAM   VACATION   OWNERSHIP,   )
INC.                                                          )
                                                                  )
                      Plaintiff,                        )
                                                                  )
v.                                                            )     CASE NO. 6: 14-cv-68-ORL-36KRS
                                                                  )
LISA MILOSZEWSKI,                              )
                                                                  )
                      Defendant.                      )
_____ )

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, WYNDHAM VACATION OWNERSHIP, INC. ("Wyndham"), through

its undersigned attorneys, files this Verified Complaint for Injunctive Relief and Damages

against Defendant, LISA MILOSZEWSKI ("Defendant"), and states as follows:

### THE PARTIES

1.        Wyndham is a Delaware corporation with its headquarters located in Orlando,

Florida.   Wyndham is a leading provider of family vacations to exciting destinations.

2.        Defendant is an individual who, upon information and belief, resides at 2003 N.

Stewart Street, Kissimmee, Florida 34746.  Defendant is over the age of eighteen and is a former

employee of Wyndham in Orlando, Florida.

### JURISDICTION AND VENUE

3.        Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 because a claim arises

under the Federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.*

Supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a) because Wyndham's claims pursuant to Florida state law form part of the same case or controversy as Wyndham's CFAA claim.

4.      Venue is proper in the United States District Court for the Middle District of Florida, Orlando Division, pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to this lawsuit occurred in this District and Defendant is subject to personal jurisdiction in this District.

## WYNDHAM'S CONFIDENTIAL AND PROPRIETARY INFORMATION AND TRADE SECRETS

5.      Wyndham has employed, and continues to employ, sales representatives who sell Wyndham's vacation ownership products. Wyndham keeps proprietary and confidential information and/or trade secrets regarding its sales representatives, including but not limited to their identities, work locations, and compensation plans, including the sales representatives' base rate of pay, commission structure, bonus structure, and policies regarding special incentives called SPIFs.

6.      In addition, Wyndham keeps proprietary and confidential information and/or trade secrets regarding its marketing sources and incentives offered to potential buyers who attend a property tour and sales pitch by Wyndham's sales representatives, including but not limited to, tour reception reports that indicate the referral source and gifting reports that indicate the type of gift provided to potential buyers in exchange for their attendance.

7.      Wyndham's tour reception reports also contain personally identifiable information regarding its potential buyers, including but not limited to, their first and last names, state of residence, home phone numbers, customer numbers, and GP account

2

numbers, as well as whether the potential buyer purchased a vacation package and the dollar amount purchased.

8.     Wyndham's proprietary and confidential sales commission statements contain information regarding Wyndham's owners' identities, including but not limited to, their first and last names, as well as information regarding the number of vacation points purchased and the dollar amount purchased.   The sales commission statements further contain confidential information regarding the sales representatives' commission on each sale.

9.     Wyndham keeps proprietary and confidential information and/or trade secrets regarding its various vacation ownership products, including but not limited to, the cost of ownership and the amenities available to owners in the various ownership packages.

10.     Wyndham has implemented security measures to maintain the secrecy of Wyndham's confidential and proprietary information and/or trade secrets, including but not limited to: identities, addresses, and telephone numbers of Wyndham's sales representatives, potential buyers, and owners; Wyndham's compensation plans; tour reception reports; and sales commission statements.   Wyndham does not make its confidential and proprietary information and/or trade secrets available to the public.

11.     Wyndham's confidential and proprietary information and/or trade secrets are kept on Wyndham mainframe computers and terminals, Wyndham distributed servers, Wyndham communication equipment, Wyndham personal computers (i.e. desktops, laptops), Wyndham storage and printing devices, Wyndham handheld devices (i.e., Blackberry, PDAs), Wyndham electronic mail, Wyndham telephones, Wyndham facsimile machines,

Wyndham voice mail, Wyndham toll-free communications and the Wyndham Internet server.

12.     Such Wyndham mainframe computers and terminals, Wyndham distributed servers, Wyndham communication equipment, Wyndham personal computers (i.e. desktops, laptops), Wyndham storage and printing devices, Wyndham handheld devices (i.e., Blackberry, PDAs), Wyndham electronic mail, and the Wyndham Internet server are accessible only to Wyndham employees with a password.

13.     Wyndham's confidential and proprietary information and/or trade secrets that are kept in paper form are subject to confidentiality and privacy policies.

14.     Wyndham policy prohibits employees, including Defendant, who have access to Wyndham's confidential and proprietary information and/or trade secrets from utilizing any personal computer, external hard drive, or other electronic storage device for the storage or maintenance of any documents containing Wyndham's confidential and proprietary information and/or trade secrets.

15.     Defendant was in possession of an external hard drive and a Company-issued iPad that contained confidential and proprietary information and/or trade secrets of Wyndham of which Defendant was aware she was required to maintain the secrecy by virtue of her acknowledgement of Wyndham's policies.

16.     Defendant acknowledged when she returned the external hard drive that the external hard drive was issued by and belonged to Wyndham and that it contained confidential and proprietary information and/or trade secrets that should not "get into the wrong hands."

17.     Wyndham has implemented a "WVO Human Resources Systems and Operations Data Access User Agreement" (the "Data Access User Agreement") stating that all data contained in Wyndham's Human Resources data systems is confidential.  The Data Access User Agreement further prohibits employees from using the Human Resources data systems without authority or in excess of their authority.  A copy of Wyndham's Data Access User Agreement signed by Defendant is affixed hereto as **Exhibit A**.

18.     Wyndham has also implemented a policy called the "Business Principles: A Code of Conduct for Employees" (the "Business Principles Policy").  Wyndham's Business Principles Policy has been affixed hereto as **Exhibit B**.

19.     The "Business Systems" referenced in Wyndham's Business Principles Policy includes such items as Wyndham mainframe computers and terminals, Wyndham distributed servers, Wyndham communication equipment, Wyndham personal computers (i.e. desktops, laptops), Wyndham storage and printing devices, Wyndham handheld devices (i.e., Blackberry, PDAs), Wyndham electronic mail, Wyndham telephones, Wyndham facsimile machines, Wyndham voice mail, Wyndham toll-free communications and the Wyndham Internet server.

20.     The "Working to Protect Our Information, Records, Systems, and Property" policy contained in the Business Principles Policy requires employees to take particular precautions to protect Wyndham, other employees, vendors, and customers from the unlawful and inappropriate use of material non-public information, confidential information, personally identifying information, and legally privileged information.  The "Working to Protect Our Information, Records, Systems, and Property" policy further specifies that these

confidentiality requirements continue even after an employee's employment with Wyndham has ended.

21.     The "Confidential and Proprietary Information" policy contained in the Business Principles Policy prohibits the disclosure of all information obtained or created in the design or development of new products, plans, procedures or inventions related to Wyndham's business, and specifically designates client lists (including phone numbers and postal and e-mail addresses), client or customer contact information, advertising, marketing or pricing plans, and cost structures or strategies as confidential and proprietary information.

22.     The "Personally Identifiable Information" policy contained in the Business Principles Policy protects information such as employees' and owners' personal phone numbers and income tax or wage records.

23.     Defendant signed acknowledgements that she received the Business Principles Policy on August 7, 2011 and October 9, 2011.  Defendant's signed acknowledgements are affixed hereto as **Exhibit C**.

24.     Wyndham also has a "Privacy Policy" that employees are responsible for consulting and is posted on Wyndham's Policy Center website.  A copy of Wyndham's "Privacy Policy" is affixed hereto as **Exhibit D**.

25.     The Privacy Policy includes as "Confidential Personally Identifiable Information" personal white page information such as home postal addresses and home telephone numbers; professional and employment information such as occupations/titles, income, salary, service fees, or other forms of compensation; and other unique persistent identifiers such as customer numbers.

26.     The Privacy Policy's "Collection, Use, Retention and Destruction of Information" provision states that all users are responsible for protecting the privacy of personally identifiable information and disclosing the minimum personally identifiable information elements required to accomplish a legitimate, relevant and necessary business purpose.

27.     The Privacy Policy's "Security of Information" provision requires users to keep personally identifiable information secure from any unauthorized use or disclosure.

28.     The Privacy Policy's "Disclosure of Information" provision restricts the disclosure of personally identifiable information to users or third parties who have a relevant and legitimate business need for the information and in accordance with applicable law.  The Disclosure of Information provision further requires users to ensure that third parties who have access to personally identifiable information adhere to Wyndham's privacy requirements and acknowledge their responsibility through a formal written statement such as a non-disclosure or confidentiality agreement.

29.     Wyndham's confidential and proprietary information and/or trade secrets allow Wyndham to acquire and retain talent at competitive compensation packages that must remain confidential.  Should a competitor gain access to Wyndham's confidential and proprietary information and/or trade secrets, it would place Wyndham at a substantial competitive disadvantage in its ability to continue to acquire and retain its sales force.

30.     Wyndham's confidential and proprietary information and/or trade secrets allow Wyndham to offer attractive vacation ownership products at competitive prices.  Obtaining the

details and pricing of Wyndham's vacation ownership products would put Wyndham at a competitive disadvantage by permitting a competitor to undersell Wyndham's products.

31.     Obtaining the personally identifiable information of Wyndham's potential buyers and owners would put the privacy of such potential buyers and owners at risk and allow a competitor to target Wyndham's potential buyers and owners.

## DEFENDANT'S EMPLOYMENT WITH WYNDHAM

32.     Defendant was employed with Wyndham as a Commissions Analyst.

33.     Information regarding Wyndham's confidential and proprietary information and/or trade secrets, including but not limited to compensation plans of Wyndham's sales representatives; training provided to Wyndham's sales representatives; the identities of Wyndham's sales representatives; the identities, home phone numbers, and purchasing information of Wyndham's potential buyers and owners; is and was contained in sales commissions statements, tour reception reports, compensation plans, bonus documents, SPIF documents, and earnings statements, as well as other documents.

34.     Defendant had access to Wyndham's sales commissions statements, tour reception reports, compensation plans, bonus documents, SPIF documents, and earnings statements, as well as other documents containing Wyndham's confidential and proprietary information and/or trade secrets in her capacity as a Commissions Analyst.

## DEFENDANT'S MISAPPROPRIATION OF WYNDHAM'S PROPRIETARY AND CONFIDENTIAL INFORMATION AND/OR TRADE SECRETS

35.     Wyndham retained Renew Data to conduct a forensic examination of the Wyndham-owned desktop computer as well as the external hard drive used by Defendant in

her capacity as a Commissions Analyst.  *See* Affidavit of Louis Scharringhausen, Senior Forensic Investigator, affixed as **Exhibit E**.

36.     In November 2013, while still employed at Wyndham, Defendant inserted unauthorized USB Devices (the "unauthorized USB devices") into her Wyndham-owned desktop computer.  *See* **Exhibit E**.

37.     Upon information and belief, Defendant copied and/or printed documents containing Wyndham's confidential and proprietary information and/or trade secrets onto one or more of the unauthorized USB devices.  *See* **Exhibit E**.

38.     On November 22, 2013, Defendant abruptly resigned her employment with Wyndham without notice.   Defendant submitted a resignation letter stating, "I quit 11/22/2013.  I will no longer work for this company and I quit effective immediately. PLEASE DO NOT CALL ME OR ATTEMPT TO REACH ME IN ANY FORM."  A copy of Defendant's November 22, 2013 Resignation Letter is affixed as **Exhibit F**.

39.     Defendant removed the external hard drive and the iPad from Wyndham property and took them with her upon her resignation.

40.     On December 6, 2013, Wyndham sent a letter (the "December 6th letter") to Defendant requesting the return of the external hard drive and the iPad.  The December 6th letter stated that Defendant was not permitted to disclose or copy any confidential or proprietary information contained on the external hard drive or the iPad or any other confidential and proprietary information in her possession.  The December 6th letter further instructed Defendant that she was not authorized to destroy or delete the information on either

device and to return all confidential or proprietary information in her possession to Wyndham. A copy of the December 6th letter is affixed as **Exhibit G**.

41.    Defendant received the December 6th letter on December 7, 2013 at 4:11 p.m. A copy of the United States Postal Service delivery receipt showing the date and time that Defendant received the December 6th letter is affixed as **Exhibit H**.

42.    Approximately two hours after Defendant received the December 6th letter, Defendant began deleting and overwriting all of the files on the external hard drive.  Upon information and belief, these documents included Wyndham's compensation plans, sales commission statements, tour reception reports and lists of sales representatives, among other confidential and proprietary and/or trade secrets. *See* **Exhibit E**.

43.    On December 8, 2013, a "wiping" program that was designed to delete and destroy data in such a way that it cannot be recovered was run on the external hard drive. *See* **Exhibit E**.

44.    As a result of the use of a "wiping" program, the documents contained on the external hard drive cannot be recovered. *See* **Exhibit E**.

45.    On December 9, 2013, Defendant returned the iPad and external hard drive with an accompanying letter signed by Defendant that represented the items had "already been wiped out prior to receiving" Wyndham's December 6th letter because Defendant "did not want any information to get into the wrong hands." A copy of Defendant's December 9, 2013 letter is affixed as **Exhibit I**.

46.     Upon information and belief, and without Wyndham's permission, Defendant printed and/or copied Wyndham's confidential and proprietary information and/or trade secrets from the external hard drive and/or the Wyndham's Business Systems. *See* **Exhibit E.**

47.     Upon information and belief, and without Wyndham's permission, Defendant deliberately erased the documents from the external hard drive to destroy evidence of Defendant's wrongdoing, including but not limited to, Defendant's copying and/or printing of electronic files that contain Wyndham's confidential and proprietary information and/or trade secrets. *See* **Exhibit E.**

48.     To the extent that Defendant saved Wyndham documents onto the external hard drive and altered them, the external hard drive erased by Defendant may have contained the only copies of documents containing Wyndham's confidential and proprietary information and/or trade secrets as altered by Defendant.

49.     To the extent that Defendant saved Wyndham documents onto the external hard drive and altered them, Defendant's actions may have permanently deprived Wyndham of access to its confidential and proprietary information and/or trade secrets as altered by Defendant.

50.     Upon information and belief, Defendant deliberately misrepresented that the documents contained on the external hard drive had been deleted before she received the December 6th letter.

51.     A Discovery Sales Representative named Julie Baer informed Wyndham's Regional Director of Human Resources, Michael Lusito, that Baer received a phone call from a former manager named Shawn Rebeyka.   Baer said that Rebeyka told her that Lisa

Miloszweski (a/k/a "Milo") "has a disk of company information involving company business." Baer further said that Rebeyka told her that Milo had given the information to Rebeyka and others.

52.     The cost of the forensic examination of the external hard drive and the attempt to recover any files that have been deleted from the external hard drive will equal in excess of $5,000 in one (1) year. *See* **Exhibit E**.

53.     The cost of the forensic examination of the desktop computer will equal in excess of $5,000 in one (1) year. *See* **Exhibit E**.

**COUNT I**
**VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT**
**(INJUNCTIVE RELIEF AND DAMAGES)**

54.     Wyndham repeats and realleges paragraphs 1 through 53 of this complaint herein.

55.     The CFAA makes it unlawful for any person to intentionally access a protected computer without authorization, or exceed authorized access, and, as a result of such conduct, obtains information from a protected computer. 18 U.S.C. § 1030(a)(2)(C).

56.     The CFAA makes it unlawful for any person to knowingly cause the transmission of a program, information, code, or command that intentionally causes damage without authorization to a protected computer. 18 U.S.C. § 1030(a)(5)(A).

57.     The CFAA makes it unlawful for any person to intentionally access a protected computer without authorization, and as a result of such conduct, recklessly cause damage. 18 U.S.C. § 1030(a)(5)(B).

58.     The CFAA makes it unlawful for any person to intentionally access a protected computer without authorization, and as a result of such conduct, cause damage or loss. 18 U.S.C. § 1030(a)(5)(C).

59.     The CFAA permits any person who suffers damage or loss by reason of a violation of 18 U.S.C. § 1030(a)(2)(C) or (a)(5)(A)-(C) to maintain a civil action against the violator to obtain economic damages and injunctive relief or other equitable relief. 18 U.S.C. § 1030(g).

60.     Defendant intentionally accessed Wyndham's protected computer, *i.e.* its Business Systems, without authorization, or exceeded her authorization, and, as a result of such conduct, caused a loss of at least $5,000. *See* **Exhibit E.**

61.     Defendant intentionally caused the transmission of a program, information, code, or command that permanently deleted all documents contained on the external hard drive. Defendant's action damaged the external hard drive because the files contained on the external hard drive cannot be recovered.

62.     By reason of the acts alleged herein, Wyndham has been damaged and suffered loss in amounts to be determined at trial. Moreover, because Wyndham's remedy at law is inadequate, Wyndham seeks injunctive relief to protect its confidential and proprietary information and/or trade secrets and other legitimate business interests.

WHEREFORE, Plaintiff, WYNDHAM VACATION OWNERSHIP, INC. demands entry of a judgment against Defendant, LISA MILOSZEWSKI, for damages, injunctive relief, court costs, and ordering such other further relief as the Court deems just and proper.

## COUNT II
### MISAPPROPRIATION OF TRADE SECRETS/ VIOLATION OF THE FLORIDA UNIFORM TRADE SECRETS ACT (Florida Statutes Section 688.001 *et. seq.*) (INJUNCTIVE RELIEF AND DAMAGES)

63.     Wyndham repeats and realleges paragraphs 1 through 53 of this complaint herein.

64.     This is an action pursuant to the Florida Uniform Trade Secrets Act, Chapter 688 of the Florida Statutes, for temporary and injunctive relief and damages upon Defendant's misappropriation of Defendant's trade secrets.

65.     Defendant misappropriated Wyndham's trade secrets without the knowledge or consent of Wyndham with the purpose of utilizing it for Defendant's own benefit. Defendant knew that Wyndham's trade secrets were the property of Wyndham, that such property was a trade secret of Wyndham, and that she was not permitted to remove, print, utilize, or disclose the confidential information.  Defendant's actions, therefore, were willful and malicious.

66.     Defendant utilized Wyndham's trade secrets for personal gain and for her own benefit.

67.     Wyndham will be irreparably harmed if Defendant is permitted to misappropriate or continue to misappropriate Wyndham's trade secrets.

68.     In addition to being irreparably harmed by Defendant's misappropriation of Wyndham's trade secrets, as a direct and proximate result of her misappropriation of Wyndham's trade secrets, Wyndham has suffered damages.

WHEREFORE, Plaintiff, WYNDHAM VACATION OWNERSHIP, INC. demands an entry of a temporary injunction, thereafter to be made permanent, in accordance with

Florida Statutes § 688.003, enjoining Defendant LISA MILOSEWSKI from any misappropriation or further misappropriation of Wyndham's trade secrets and all other documents, data, and information derived from Wyndham's trade secrets; requiring Defendant to return all of Wyndham's trade secrets and all other documents, data, and information derived from Wyndham's trade secrets; awarding Wyndham exemplary damages in accordance with Florida Statutes § 688.004; awarding Wyndham's attorney's fees pursuant to § 688.005; awarding Wyndham court costs; and ordering such other further relief as the Court deems just and proper.

**COUNT III**
**CONVERSION**
**(DAMAGES)**

69.     Wyndham repeats and realleges paragraphs 1 through 53 of this complaint herein.

70.     Defendant has unlawfully converted Wyndham's proprietary and confidential and/or trade secret information that Wyndham had entrusted Defendant to keep confidential.

71.     Wyndham has an immediate and superior right of possession in the converted property of Wyndham's proprietary and confidential and/or trade secrets.

72.     Defendant exercised, and continues to exercise, unauthorized dominion and control over the converted property, to the exclusion of Wyndham.

73.     Wyndham has caused to deliver written communication demanding return of Wyndham's confidential and proprietary information and/or trade secrets.

74.     Although Defendant purported to return Wyndham's property, she has not returned the unauthorized USB devices or any physical or electronic copies of Wyndham's confidential and proprietary information and/or trade secrets.

75.     Defendant's permanent deletion of Wyndham's confidential and proprietary information and/or trade secrets constitutes conversion.

76.     Defendant's removing of Wyndham's confidential and proprietary information and/or trade secrets from Wyndham's computer systems and her continued retention of such information constitutes conversion.

77.     Wyndham has been damaged as a direct and proximate result of Defendant's unlawful conversion.

WHEREFORE, Plaintiff, WYNDHAM VACATION OWNERSHIP, INC. demands entry of a judgment against Defendant, LISA MILOSEWSKI, for damages, court costs, and ordering such other further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Wyndham demands a jury trial of all issues so triable.

## **VERIFICATION**

I have reviewed the above and verify that the facts set forth are true and correct to the best of my knowledge.

_____
MICHAEL LUSITO

STATE OF FLORIDA  )
        ) SS.
COUNTY OF _orange_ )

SWORN TO AND SUBSCRIBED before me this _6_ day of January 2014, by MICHAEL LUSITO, who is personally known to me or has produced _drivers license_ as identification.

_____
Notary Public
State of Florida at Large

**Lucy Rodriguez**

17

DATED this 15th day of January 2014.

Respectfully submitted,

JACKSON LEWIS P.C.
390 North Orange Avenue, Suite 1285
Post Office Box 3389
Orlando, Florida 32802-3389
Telephone:     (407) 246-8440
Facsimile:     (407) 246-8441

By:   *Ajda M. Nguyen*
Stephanie L. Adler-Paindiris
Florida Bar No. 523283
adlers@jacksonlewis.com

Juan C. Lopez-Campillo
Florida Bar No. 0139785
juan.lopez@jacksonlewis.com

Jessica DeBono Anderson
Florida Bar No. 0058503
jessica.anderson@jacksonlewis.com

Ajda M. Nguyen
Florida Bar No. 22485
nguyena@jacksonlewis.com

Attorneys   for   Defendant   WYNDHAM
VACATION OWNERSHIP, INC.

4833-6109-2375, v. 1

18